Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>TR BEACH GROUP LLC, a New Jersey Limited Liability Company; and<br><br>P J OCEAN, INC., a New Jersey Corporation,<br><br>Defendants. | Case No. 1:26-cv-13956<br><br>**COMPLAINT** |

**Introduction**

Plaintiff, DENNIS MAURER, an individual ("Plaintiff"), on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendants, TR BEACH GROUP LLC, a New Jersey Limited Liability Company ("TR Beach Group"), and P J OCEAN, INC., a New Jersey Corporation ("P J Ocean") (collectively, "Defendants"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD").

## **The Parties**

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise *sui juris*. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, TR BEACH GROUP LLC, owns the parcel of land which encompasses the place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD, and, upon information and belief, leases that parcel to P J Ocean.

3. Defendant, P J OCEAN, INC., operates a place of public accommodation, a restaurant known as Papa Johns ("Papa Johns"), alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## **Jurisdiction and Venue**

4. Defendants' property/place of public accommodation – a restaurant known as Papa Johns – is located at 152 Route 37 East, Toms River, NJ 08753 (also known as Block 639, Lot 5 on the municipal tax map of the Township of Toms River, Ocean County) (the "Property").

5. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

6. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*[1]

7. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C. § 1367.

---

[1] *See also* 28 U.S.C. §§ 2201 and 2202.

8. Each of the Defendants owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. Each of the Defendants is thus required to comply with the obligations of the ADA.[2]

9. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of Title III.[3] Although the allocation of responsibility for compliance may be determined by lease or other contract as between the landlord and its tenant, any such allocation does not relieve either of the Defendants of their obligations to the Plaintiff. Accordingly, each of the Defendants is responsible to the Plaintiff for the removal of all of the barriers to access identified herein, throughout the entirety of the Property.

10. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

**Factual Background**

11. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

---

[2] 28 C.F.R. §§ 36.201(a) and 36.104.
[3] 28 C.F.R. § 36.201(b).
[4] As defined by 28 C.F.R. § 36.105(b)(1)–(2).

12. Mr. Maurer is the President of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

13. Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs – the same holds true for the Property which forms the basis of this action.

14. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

15. As part of his duties within The Independence Project, Mr. Maurer inspects properties that were previously in violation of the ADA and subject to litigation by the advocacy group and/or its members. Such properties are inspected by Mr. Maurer, or other members (based on scheduling and geography), in order to determine if such have been made accessible and continue to remain in compliance; it is his normal practice to inspect the properties under his purview at least twice per year. Additionally, Mr. Maurer inspects additional properties that he visits as a patron, or when they are incident to his inspection routes, and/or when they are along his usual travel routes.

16. The properties in close proximity to the Property which have previously been subject to litigation by The Independence Project and/or its members for non-compliance with the ADA, and are now subject to reinspection by Mr. Maurer, include the following:

a. 132 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. White Castle System, Inc.*, No. 2:13-cv-01654 (D.N.J. filed Mar. 18, 2013)

b. 955 Hooper Avenue, Toms River, NJ 08753; *The Independence Project, Inc. v. Parsko, Inc.*, No. 3:18-cv-00683 (D.N.J. filed Jan. 17, 2018)

c. 213 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. DHG*, No. 2:19-cv-06503 (D.N.J. filed Feb. 21, 2019)

d. 290 Route 37, Toms River, NJ 08753; *The Independence Project, Inc. v. CT TR Holdings LLC*, No. 3:19-cv-06573 (D.N.J. filed Feb. 22, 2019)

17. Mr. Maurer has visited the Property on several occasions when in the area; his most recent visit occurred on or about August 25, 2026. On this, and past occasions, Mr. Maurer has visited the Property as a bona fide patron with the intent to avail himself of the goods and services offered to the public within but found that the Property was rife with violations of the ADA – both in architecture and in policy. Because both of the Property's entrances are reached only by stairs, Mr. Maurer cannot enter Papa Johns in his wheelchair at all; on his most recent visit he was forced to wait outside while his wife and son entered the restaurant to place and pick up the family's order, and they observed the interior barriers described below.

18. Mr. Maurer and his family frequently vacation at the Jersey Shore. In doing so, Mr. Maurer has stayed at several hotels in close proximity to the Property,[5] including during his August

[5]Including Howard Johnson by Wyndham Toms River, 955 Hooper Avenue, Toms River, NJ 08753; Sunset Motel, 56 Webster Avenue, Seaside Heights, NJ 08751; and Cloud 9 Inn, 124 Hamilton Avenue, Seaside Heights, NJ 08751.

2026 visit, and he plans to continue to do so in the future when his family is vacationing near Long Beach Island. The Property is located along Route 37 East – the principal route between the Garden State Parkway and the hotels in Toms River and Seaside Heights at which Mr. Maurer stays.

19. Further, Mr. Maurer travels to the area approximately once per month to visit Eastern Dental in nearby Manahawkin[6] for his son's ongoing orthodontia treatments. Moreover, each member of Mr. Maurer's family uses Eastern Dental as their general dental practitioner for regular cleanings and other dental work.

20. Prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible – as such he regularly travels across New Jersey, Pennsylvania, and New York. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

a. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804

b. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013

c. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020

d. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028

e. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757

f. Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073

g. Saratoga Race Course, located at 267 Union Ave, Saratoga Springs, NY 12866

---

[6] Eastern Dental, Manahawkin Village Shopping Center, 715 Route 72 West, Manahawkin, NJ 08050.

21. The Property is located just off Exit 82 of the Garden State Parkway, and is on Mr. Maurer's route from his home north on the Garden State Parkway to Monmouth Park, which he travels to several times per year.

22. In sum, the Property is (1) a place Mr. Maurer has visited on several occasions, (2) in close proximity to the hotels at which he has stayed and will continue to stay when vacationing at the Jersey Shore with his family, (3) in the area to which he travels approximately once per month for his family's dental care in Manahawkin, (4) near several other properties inspected by Mr. Maurer for ADA compliance, and (5) on his route north on the Garden State Parkway to Monmouth Park.

23. Mr. Maurer will return to the Property in the future when traveling to and from the hotels in Toms River and Seaside Heights, when traveling to the area for his family's dental appointments in Manahawkin, when traveling to Monmouth Park, and when performing inspections at the properties in the vicinity. Mr. Maurer shall make these visits not only as a patron but also to monitor any progress made with respect to ADA compliance – he hopes his return visits are not further deterred nor made in vain.

24. Mr. Maurer has physically visited the Property and personally encountered exposure to architectural barriers and otherwise harmful conditions that have caused him embarrassment and frustration and that have excluded him from entering Papa Johns altogether.

25. The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendants.

26. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Property

as described, but not necessarily limited to the barriers he has personally encountered or observed – which are listed in Paragraph 34 of this complaint.

27. Following any resolution of this matter Plaintiff will ensure that the Defendants undertake the remedial work that is required to cure existing violations, under the appropriate standard, and in full compliance with the ADA.

**COUNT I**
**Violation of Title III of the**
**Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.***

28. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

29. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[7]

30. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[8]

31. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability."[9]

32. The Defendants have discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the

[7] 42 U.S.C. § 12101(a)(1).
[8] *Tennessee v. Lane*, 541 U.S. 509, 535–36 (2004) (Ginsburg, J., concurring).
[9] 42 U.S.C. § 12188(a)(1).

goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

33. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 34 is both technically feasible and readily achievable. Plaintiff's expert has based this judgment on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

34. The following are architectural barriers and violations of the ADA that Mr. Maurer has either personally encountered or observed during his visits to the Property, including barriers that precluded him from accessing certain areas and features of the Property:

**<u>Parking and Exterior Accessible Route</u>**

a. The Property fails to provide an accessible route to any entrance of Papa Johns – the public entrance at the front of the building and the entrance at the rear of the building are each reached only by a flight of stairs, and no ramp, lift, or other accessible means of entry is provided; violations of the ADAAG and Sections 206.2.1, 206.4.1, 303.4, 402, and 405 of the 2010 ADA Standards, which require at least one accessible route from accessible parking to an accessible entrance, at least 60 percent of all public entrances to be accessible, changes in level greater than ½ inch to be ramped, and ramps to have a running slope no steeper than 1:12 (8.33%), a cross slope no steeper than 1:48 (2.08%), level landings at the top and bottom of each ramp run, and handrails where the rise exceeds 6 inches. Due to

these stairs Mr. Maurer cannot enter Papa Johns in his wheelchair at all and is wholly excluded from the restaurant.

b. The Property fails to provide any designated accessible parking – the only parking space marked near the entrance is a single striped space with no access aisle, no International Symbol of Accessibility, and no identification sign, and that contains running slopes and cross slopes steeper than 1:48 (2.08%), and a striped area at the base of the front stairs bears no marking or signage indicating what it is intended to be, likewise contains running slopes and cross slopes steeper than 1:48 (2.08%), and does not adjoin an accessible route; violations of the ADAAG and Sections 216.5, 502, 502.2, 502.3, 502.4, and 502.6 of the 2010 ADA Standards, which require accessible car spaces at least 96 inches wide (van spaces 132 inches wide, or 96 inches wide with a 96-inch access aisle), each accessible parking space to be served by an access aisle at least 60 inches wide (96 inches where serving a 96-inch-wide van space) that extends the full length of the space it serves, is marked so as to discourage parking in it, and adjoins an accessible route, parking spaces and access aisles with no slopes steeper than 1:48 (2.08%) in any direction, and each accessible parking space to be identified by a sign showing the International Symbol of Accessibility mounted with its bottom at least 60 inches above the ground, with van-accessible spaces designated "van accessible." Mr. Maurer's van utilizes a fold-out ramp which requires a flat, stable surface and an adjacent clear area in order to fully extend; without a designated accessible space and access aisle he cannot safely park, deploy his ramp, and exit his vehicle.

c. The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), as no accessible parking space is provided at all; a violation of the ADAAG and Sections 208 and 502 of the 2010 ADA Standards, which require the number of accessible spaces set by Table 208.2 based on the total number of parking spaces provided, with at least one of every six accessible spaces being van accessible, located on the shortest accessible route to an accessible entrance. Due to the lack of accessible parking, Mr. Maurer is forced to park without the benefit of an access aisle, which adds the additional fear of becoming blocked out from his van (or trapped inside) by an adjacent vehicle. Additionally, if the one parking space is taken, then he must park somewhere else in the lot where he becomes exposed to vehicles travelling through the vehicular way.

d. The Property fails to provide a compliant route to the adjacent street, sidewalk, and/or public transportation route – no accessible pedestrian route connects the Route 37 East frontage to the building, and the building itself cannot be entered without climbing stairs. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits his options for access and transportation, and a violation of the ADAAG and Section 206.2.1 of the 2010 ADA Standards, which requires at least one accessible route within the site from public streets and sidewalks, public transportation stops, and accessible parking to an accessible entrance.

**<u>Access to Goods and Services</u>**

e. Entering Papa Johns is impeded by a step up to the threshold at the top of the front stairs, abrupt changes in level at the doorway, a lack of level maneuvering clearance at the door, and door hardware consisting of a round door knob; violations of the ADAAG and Sections 303 and 404 of the 2010 ADA Standards, which require a clear opening width of at least 32 inches, thresholds no higher than ½ inch (¾ inch for existing or altered thresholds, beveled no steeper than 1:2), hardware operable with one hand without tight grasping, pinching, or twisting of the wrist (round knobs do not comply) mounted 34 to 48 inches above the floor, and level maneuvering clearance (no slopes steeper than 1:48) on both sides of the door, including at least 60 inches of depth with at least 18 inches beyond the latch side on the pull side for a front approach. Even if Mr. Maurer could reach the door, these barriers would prevent him from opening it and entering without assistance.

f. Papa Johns provides a sales and service counter which is mounted beyond the prescribed reach ranges (above 36 inches AFF); a violation of the ADAAG and Sections 308 and 904.4 of the 2010 ADA Standards, which require operable parts to be mounted between 15 and 48 inches above the floor, and sales and service counters to provide a portion at least 36 inches long and no higher than 36 inches above the floor, with a clear floor space positioned for a parallel or forward approach. Due to the height of the counter Mr. Maurer cannot make use of it to place his order, pay, and receive his food in the same manner as non-disabled patrons.

g. Papa Johns provides self-service beverage coolers whose shelves and beverages are located beyond the prescribed reach ranges; a violation of the ADAAG and Sections 308 and 904.5 of the 2010 ADA Standards, which require self-service shelves and dispensing devices for food and beverages to comply with Section 308, which places shelves and operable parts no higher than 48 inches above the floor for an unobstructed reach, and no higher than 44 inches where the reach is over an obstruction 20 to 25 inches deep, with a clear floor space positioned for a forward or parallel approach. Due to their height Mr. Maurer cannot independently select a beverage from one of the coolers.

**Restrooms**

h. No public restroom was reported at Papa Johns. Further inspection will determine whether a restroom is provided for public use and, if so, whether it complies with Sections 213 and 601 through 606 of the 2010 ADA Standards.

35. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 C.F.R. § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[10]

---

[10] 28 C.F.R. § 36.104.

36. The discriminatory violations described in Paragraph 34 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally encountered or observed by Mr. Maurer and his family. Given the violations discovered and listed herein, the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendants regarding the full scope of this action.[11]

37. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury, and damage without the immediate relief provided for by the ADA and requested herein.

38. Defendants have discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their place of public accommodation or commercial facility in violation of the ADA.

39. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[12]

---

[11] *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them); *accord Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013) (per curiam) (plaintiff who used a wheelchair had standing to challenge barriers at a restaurant related to his disability that he had not yet encountered); *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000) (plaintiff who encountered a barrier had standing to challenge other barriers at the property related to his disability).
[12] 42 U.S.C. § 12182(b)(2)(A)(iv).

40. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[13]

41. Further, to the extent the Defendants contend that the removal of any of the barriers identified herein is not readily achievable, the Defendants have failed to make the goods and services of Papa Johns available through alternative methods – such as curbside service – as required by 42 U.S.C. § 12182(b)(2)(A)(v) and 28 C.F.R. § 36.305. Nothing on the Papa Johns website, its mobile application, or the signage on the exterior of the building indicates that curbside service is available. Nor is the home delivery offered by Papa Johns an equivalent alternative: delivery carries additional fees, prevents Mr. Maurer from viewing the menu and beverage selections and choosing for himself as other patrons do, and deprives him and his family of the convenience of carryout – including the choice to pick up their pizza and eat it in their van on the way home or wherever else they may be going. This policy failure is ongoing and must be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

42. Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to undertake such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[14]

43. Pursuant to 28 C.F.R. § 36.304(a) the Defendants shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such

---

[13] 42 U.S.C. § 12182(b)(2)(A)(ii).
[14] 42 U.S.C. § 12182(b)(2)(A)(iii).

removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

44. The ADA contains no "grandfather" provision. Title III's barrier-removal obligation applies to every existing place of public accommodation without regard to when it was constructed,[15] and the "grandfather" provisions often found in local building codes do not exempt a public accommodation from its obligations under the ADA.[16] A facility's age bears only on which standard governs a given element, not on whether the ADA applies; the sole protection the regulations afford existing elements is the limited safe harbor of 28 C.F.R. § 36.304(d)(2), which applies only to elements that already comply with the 1991 Standards.

45. If the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993,[17] then the Defendants' facility must be readily accessible to and usable by individuals with disabilities in accordance with the 1991 Standards or, for construction commenced on or after March 15, 2012, the 2010 Standards.[18]

46. Pursuant to 28 C.F.R. § 36.402(a)(1), "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[19] Discovery in this matter will reveal if and when such alterations have taken place at the Property,

---

[15] 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a).
[16] U.S. Dep't of Justice, Civil Rights Div., *ADA Update: A Primer for Small Business* (Mar. 2011).
[17] As defined by 28 C.F.R. § 36.401(a)(2).
[18] 28 C.F.R. § 36.406(a).
[19] 28 C.F.R. § 36.402(a)(2).

and to what corresponding technical and scoping specification the Defendants must meet/exceed to bring the Property into compliance with the ADA.

47. 28 C.F.R. § 36.304(d)(2) controls with respect to the corresponding technical and scoping specification to which each element that has not been altered must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered on or after March 15, 2012, and that comply with the corresponding technical and scoping specifications in the 1991 Standards, are not required to be modified to comply with the 2010 Standards.

b. Before March 15, 2012, elements that did not comply with the 1991 Standards were required to be modified to comply with either the 1991 Standards or the 2010 Standards.

c. On or after March 15, 2012, elements that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

48. Plaintiff is not required to notify the Defendants of their violations of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Mr. Maurer has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

49. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendants, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

50. Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendants.

51. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Property and make such readily accessible to and usable by the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendants cure all violations of the ADA.[20]

**WHEREFORE**, Plaintiff respectfully demands:

a. The Court issue a Declaratory Judgment determining that the Defendants are in violation of Title III of the ADA.

b. Injunctive relief against the Defendants including an order to (1) cure all ADA violations existing at the Property listed herein – and those later found through discovery – within the next six months; (2) make the Property accessible to and usable by individuals with disabilities; and (3) require the Defendants to make reasonable modifications in policies, practices, or procedures, to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendants to cease their discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

[20] 42 U.S.C. § 12188(b)(2).

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

**<u>COUNT II</u>**
**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 *et seq.***

52. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

53. The Property is a place of public accommodation as defined by N.J.S.A. 10:5-5.

54. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[21]

55. As set forth above, the Defendants have violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

56. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained injury through the Defendants' actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation; in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands:

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendants are in violation of the LAD.

---

[21] N.J.S.A. 10:5-4.

c. An injunction ordering the Defendants to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses, including expert fees and costs.

e. An order requiring the Defendants to cease their discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 26th day of October 2026,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*